J-A16009-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JANINE MARY ORIE, | : | |
| | : | |
| Appellant | : | No. 941 WDA 2013 |

Appeal from the Judgment of Sentence May 7, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No(s): CP-02-CR-0010286-2010
and CP-02-CR-0015981-2011

BEFORE:  DONOHUE, OTT and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED AUGUST 21, 2014**

Appellant, Janine Mary Orie ("Orie"), appeals from the judgment of sentence entered on May 7, 2013, following her convictions for two counts of theft of services, 18 Pa.C.S.A. § 3926(b), and one count each for conspiracy to commit theft of services, 18 Pa.C.S.A. § 903(a), misapplication of entrusted property, 18 Pa.C.S.A. § 4113(a), tampering with or fabricating physical evidence, 18 Pa.C.S.A. § 4910, and solicitation to tamper with or fabricate physical evidence, 18 Pa.C.S.A. § 902(a).  Orie further contends that the written sentencing order does not include any reference to the condition that she write apology letters to certain individuals and family members and, therefore, that requirement is a nullity.  For the reasons that follow, we affirm the judgment of sentence and conclude that the written sentencing order dictates the terms of her sentence.

At all times relevant hereto, Orie was employed as a secretary in the Superior Court chambers of her sister, Joan Orie Melvin ("Orie Melvin"). On April 6, 2010, the Commonwealth charged Orie at docket number CP-02-CR-0010286 (hereinafter, "CC201010286") with theft of services and conspiracy to commit theft of services, based upon allegations that she conspired with another of her sisters, then State Senator Jane Clare Orie ("Jane Orie"), to divert the services of Jane Orie's legislative staff for the benefit of Orie Melvin's 2009 political campaign for a seat as a Justice on the Supreme Court of Pennsylvania. On February 8, 2011, a jury trial commenced on the charges at CC201010286. Jane Orie was a co-defendant at this trial.

On the morning of March 3, 2011, while the jury was deliberating, the trial court, per the Honorable Jeffrey Manning, commenced a proceeding at the behest of the Commonwealth relating to three exhibits introduced at trial by counsel for Jane Orie which, according to the Commonwealth, were obvious forgeries. Judge Manning agreed that the exhibits appeared to be forgeries, stating on the record that "Ray Charles could see that the signatures are doctored." N.T., 3/3/2011, at 7. Judge Manning asked counsel for remedies for the introduction of the forged documents, at which time counsel for Orie advised that if it became necessary to declare a mistrial, "it has nothing to do with [Orie]." *Id.* at 18. Judge Manning halted the jury deliberations and recessed, determining that an evidentiary hearing

would take place later that day, at which time the trial court would hear the testimony of a handwriting expert regarding the allegedly forged documents.

At this point, counsel for Orie requested and received permission from Judge Manning to have lunch at a local restaurant. *Id.* at 37; Orie's Brief at 12. Although counsel for Orie believed he would be called by the court before the commencement of any proceeding, this did not occur. Although Orie was present, the evidentiary proceeding and argument on alternatives to a mistrial took place in her counsel's absence. When her counsel returned to the courtroom, he was advised that a mistrial had been declared as to both defendants. The following exchange then took place:

> [THE COURT]: You were to be here at 2:00 like everyone else.
>
> [COUNSEL]: Your Honor, I am sorry. When I asked you if I could leave for lunch you said be available within ten minutes. Nobody called me. I called here and asked what was going on. When I was told by Peggy that there was something going on I immediately came here.
>
> [THE COURT]: All right. That is good enough.
>
> [COUNSEL]: That is number one.
>
> [THE COURT]: Number two, I will hear [] what you want to say about a mistrial. There is manifest necessity here and a mistrial is going to be granted, so what do you say?
>
> [COUNSEL]: Well, there is – absolutely nothing about any of this has to do with [Orie]. These documents have nothing to do with 2009, number one; and number two, they weren't used by the

> prosecutor to prosecute [Orie], and they weren't used by [counsel for Jane Orie] in any way to infer any innocence on the part of [Orie], and they have nothing to do with [Orie]. This mistrial should not apply to [Orie].
>
> [THE COURT]: I understand your position. She is charged as a co-conspirator and an accomplice with the person with whom the mistrial is granted. I don't think that there is any choice but that the Court has to grant a mistrial in her matter as well.

N.T., 3/3/2011, at 37-38.

On April 4, 2011, Orie filed a motion for dismissal of all charges at CC201010286 on the grounds of double jeopardy under the Pennsylvania and United States Constitutions. On April 13, 2011, Judge Manning entered an order denying the motion as frivolous.[1]

While awaiting retrial, the Commonwealth filed new charges against Orie at docket number CP-02-CR-0015981 (hereinafter, "CC201115981"), asserting claims for theft of services, misapplication of entrusted property, tampering with or fabricating evidence, and solicitation to tamper with or

---

[1] Judge Manning likewise ruled that a similar motion to dismiss filed by Jane Orie was frivolous. This Court denied review. The Supreme Court granted in part Jane Orie's petition for allowance of appeal, remanding the case to this Court for a determination as to whether the trial court erred in finding Jane Orie's motion to be frivolous. By published opinion filed August 31, 2011, this Court ruled that Jane Orie's motion was frivolous because it was based upon the perpetration of a fraud upon the court by Jane Orie using forged documents. **Commonwealth v. Orie**, 33 A.3d 17 (Pa. Super.), *appeal denied*, 32 A.3d 1195 (Pa. 2011). On September 27, 2011, the Supreme Court denied Jane Orie's petition for allowance of appeal from this Court's decision. **Commonwealth v. Orie**, 32 A.3d 1195 (Pa. 2011).

- 4 -

fabricate physical evidence. These charges were based upon allegations relating to activities in Orie Melvin's judicial chambers during her 2003 and 2009 political campaigns for the Supreme Court. On January 23, 2013, a jury trial commenced against Orie (on the charges at both CC201010286 and CC201115981) and Orie Melvin, who was charged with three counts of theft of services and one count each for conspiracy to commit theft of services, misapplication of entrusted property, and conspiracy to tamper with or fabricate evidence.

On February 21, 2013, the jury found Orie guilty of all charges at both CC201010286 and CC201115981. As set forth in its written Order of Sentence dated May 7, 2013, the trial court, per the Honorable Lester Nauhaus, sentenced Orie for the crimes at CC201115981 to two concurrent one year terms of county intermediate punishment (house arrest), to be followed by two years of consecutive probation. Orie received no additional penalty for her convictions at CC201010286. Not set forth in the written sentencing order, but as described in the transcript of the May 7, 2013 sentencing hearing, the trial court purported to impose an additional condition on Orie, namely that she write letters of apology to her family and those she that instructed to do political work:

> [THE COURT]: During the period of your sentence, starting with your sentence of house arrest, you will send an apology to each one of the people that you told they had to do political work, and that you are sorry for making them do that. You will also

send an apology to each one of the members of your family that you have put through this.

Do you understand me?

[ORIE]:      Yes, Judge.

N.T., 5/7/2013, at 58.[2]

This timely appeal followed, in which Orie raises five issues for our consideration and determination:

I.    Whether the declaration of a mistrial *sua sponte* after the jury had begun deliberations in the first trial at CC201010286 constituted an abuse of discretion by the trial judge when there was a failure to consider if there were less drastic alternatives to a mistrial, and, in any event, there was no compelling necessity for the mistrial as to [Orie] so that retrial was barred by that portion of Article I, Section 10 of the Pennsylvania Constitution barring double jeopardy?

II.   Whether the declaration of a mistrial *sua sponte* after the jury had begun deliberations in the first trial at CC201010286 was not based on manifest necessity 'in the sole interest' of [Orie] so that retrial was barred by the Fifth Amendment of the United States Constitution barring double jeopardy?

III.  Whether [Orie] was denied her right to a fair trial at CC201115981 by the combining of that trial with the constitutionally barred retrial at CC201010286, thus prejudicing [Orie]?

_____

[2]  On October 2, 2013, Orie filed an "Application for Stay of Portion of Criminal Sentence Requiring Appellant to Write Letters of Apology Pending Disposition of this Direct Appeal."  By order dated November 6, 2013, this Court denied the Application based upon Orie's failure to comply with the dictates of Rule 1732 of the Pennsylvania Rules of Appellate Procedure.

IV.	Whether it was error for the trial court to instruct the jury on the issue of accomplice liability after the jury started deliberations?

V.	Whether the trial court erred procedurally and legally in attempting to require [Orie] to write letters of apology as part of her criminal sentence at CC201115981?

Orie's Brief at 4.

For her first two issues on appeal, Orie claims that her retrial on the charges at CC201010286 was barred by principles of double jeopardy under both the Pennsylvania and United States Constitutions. Article I, Section 10 of the Pennsylvania Constitution provides that "[n]o person shall for the same offense, be twice put in jeopardy of life or limb …." PA. CONST. art. I, § 10. The Fifth Amendment to the United States Constitution holds that "…nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The protections against double jeopardy under the Pennsylvania and United States Constitutions are coextensive and thus may be analyzed together. *Commonwealth v. Cosnek*, 836 A.2d 871, 873 n.2 (Pa. 2003); *Commonwealth v. Buffington*, 828 A.2d 1024, 1029 (Pa. 2003); *Commonwealth v. Barber*, 940 A.2d 369, 377 (Pa. Super. 2007) *appeal denied*, 960 A.2d 835 (Pa. 2008); *Commonwealth v. States*, 891 A.2d 737, 742 (Pa. Super. 2005), *affirmed*, 938 A.2d 1016 (Pa. 2007).

Our standard of review with respect to the granting of a mistrial and its effect on double jeopardy is as follows:

> It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision. Where there exists manifest necessity for a trial judge to declare a mistrial *sua sponte*, neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial.

*Commonwealth v. Hoovler*, 880 A.2d 1258, 1260 (Pa. Super.) (quoting *Commonwealth v. Kelly*, 797 A.2d 925, 936 (Pa. Super. 2002)), *appeal denied*, 890 A.2d 1057 (Pa. 2005).

In *Commonwealth v. Diehl*, 615 A.2d 690 (Pa. 1992), our Supreme Court described the legal standards to be applied when considering whether manifest necessity for a trial court's *sua sponte* declaration of a mistrial existed:

> Since Justice Story's 1824 opinion in *United States v. Perez*, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on where there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions.
>
> Pennsylvania Rule of Criminal Procedure [605(B)] provides that:

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.
>
> In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant.

*Id.* at 691 (citations omitted).

Moreover, in ***Commonwealth v. Leister***, 712 A.2d 332 (Pa. Super.), *appeal denied*, 732 A.2d 613 (Pa. 1998), this Court recognized that the trial judge, "who is the foremost authority in his or her courtroom," is usually best positioned to determine the necessity of a mistrial. ***Id.*** at 335 (citing ***Wade v. Hunter***, 336 U.S. 684. 688 (1949) and ***In Interest of Morrow***, 583 A.2d 816, 818 (Pa. Super. 1990)). In ***Leister***, we further recognized that "[t]his principle assumes great weight when the issue involves how the

presentation of evidence or the conduct of parties affects a trial's fact-finder." *Id*. (citing **Arizona v. Washington**, 434 U.S. 497, 514 (1978) and **Commonwealth v. Smith**, 467 A.2d 888, 891 (Pa. Super. 1983)).

In the present case, Orie argues that no manifest necessity existed to support the entry of a mistrial *sua sponte* on the charges against her in the first trial. She contends that while her co-defendant introduced forged documents into evidence to impeach the credibility of a key prosecution witness, Jamie Pavlot ("Pavlot"), her counsel never referenced these forged documents in his cross-examination of Pavlot. Orie's Brief at 18-19. To the contrary, Orie claims that the forged documents did not concern any events in 2009, the only year during which the Commonwealth alleged that Orie was involved in criminal conduct. *Id.* In addition, Orie asserts that the trial court declared a mistrial in the absence of her counsel, and upon his arrival made no attempt to explore alternatives to declaring a mistrial – including the possibility of declaring a mistrial only as to Jane Orie, instructing the jury to disregard the forged exhibits, and permitting the jury to complete its deliberations on the charges against Orie. *Id.* at 19-21.

Judge Manning addressed all of these issues as follows:

> Although [Orie] did not offer the documents into evidence, she certainly stood to benefit from them to the same extent as her co-defendant. She was charged with criminal conspiracy and her co-defendant was alleged to be her co-conspirator. The fact that the documents were dated prior to 2009 is immaterial. They were offered to impeach the

Commonwealth's most important witness, [Pavlot], who was her co-defendant's Chief of Staff. Pavlot's credibility was certainly material to this defendant's case as much as it was material to that of her co-defendant. If the jury doubted Pavlot's credibility, this defendant would have clearly benefitted. To allow the jury to consider forged documents in making that important credibility determination would have undermined the fact finding process that is at the heart of any trial.

The [c]ourt also had to consider the possibility that the forgery, if it were discovered by the jury, could work to the prejudice of this defendant. Had the Court not declared a mistrial as to this defendant and a verdict of guilty were returned, the defendant would have been able to raise the introduction of the forged documents by her co-defendant as a basis for a new trial.

In **Commonwealth v. Wilson**, 390 A.2d 847 (Pa. Super. 1978), the trial court was faced with a somewhat similar situation. During a joint trial, a Commonwealth witness mentioned seeing mugshots of the defendants. The codefendant moved for a mistrial but the defendant, after initially joining in that request, withdrew it and requested that he be permitted to proceed to trial. The [trial court], over the defendant's objection, granted the mistrial *sua sponte*. The defendant was convicted and appealed. The Superior Court upheld the trial court's decision, writing:

> The issue is clearly whether the circumstances in this case and the grant of a mistrial under the obviously questionable circumstances and events created a situation of manifest necessity? In the landmark decision of **U.S. v. Perez**, 22 U.S. (9 Wheat.) 579, 6 L.Ed 165 (1824), the Supreme Court stated:

- 11 -

We think that in all cases of this nature, the law has invested Courts of Justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful, how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. *Id.* at 580.

390 A.2d at 848. The Court went on to state:

We agree with the court below that the circumstances of this case created the manifest necessity required by the rule, *supra*, and that it was done to protect the defendant from the 'mug shot' evidence. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). His reluctance to be so protected was motivated by trial strategy to assure a new trial in the event of conviction. The action of the court below '**was insuring that appellant would receive a trial by a fair and impartial jury which**

> **would return a verdict based solely on the evidence adduced at trial. This is an interest which is to be protected not only for defendants, but also for the public, which has a compelling interest in justice for all.**' ***Commonwealth v. Stewart***, *supra*, 456 Pa. page 453, 317 A.2d page 619.

***Id.*** at 849 (emphasis supplied).

To allow this defendant to proceed to trial after the mistrial was properly declared as to her co-defendant based on the submission of clearly forged documents would have allowed for the possibility of a verdict corrupted, one way or the other, by the introduction of forged and fraudulent documents. The defendant could have benefitted from the forged documents if the jury was unaware of the forgery and found them damaging to the witnesses credibility. If convicted, the defendant would be free to argue on appeal that her right to a fair trial was denied by the actions of her co-defendant in offering forged documents. Declaring a mistrial as to her was made manifestly necessary because to do nothing would have allowed a corrupted trial to end with a corrupted verdict.

The [c]ourt must also address the defendant's contention that the mistrial was declared *ex-parte*, which resulted in the Court not considering appropriate alternatives. Defense counsel was present on the morning of March 3, 2011 when the documents were displayed in open court and the alterations made to them were clearly apparent. He was present when the Court engaged in extensive discussions with counsel for the co-defendant and the prosecutor. He did not make any argument. Near the end of the morning session, when the Court indicated that it would break to allow time for a document examiner to appear and testify, in response to the statement by counsel for the co-defendant that before the Court instructs the jury on the forged documents '...declare a mistrial.' (M.T.

[fn.#1] 3/3/11; p. 18), defense counsel said: 'And your honor, if I might, if there is any mistrial declared it has nothing to do with Janine Orie.' (M.T.; 3/3/11; p. 18). The Court responded, 'I am aware of that, Mr. DePasquale, and I agree with you. The jury has been instructed that they are not to continue their deliberations at this time. Their lunch is coming at 12:15. We will resume this matter in half an hour.' (M.T.; 3/3/11; p.18).

When [c]ourt resumed after the recess, counsel for the defendant was not present despite having been advised that [c]ourt would resume in 'half an hour.' Counsel's unexplained absence was not, unfortunately, noticed by this Court, its staff, the Commonwealth or co-defendant's counsel. The defendant was present. The Court then heard from the document examiner and entertained argument from counsel for the codefendant and the prosecutor. During that argument, alternatives to declaring a mistrial were considered. The Court then explained its findings with regard to the documents and advised that it was going to bring the jury down and explain to them that a mistrial was being declared and why. When the prosecutor mentioned the co-defendant, the Court began to explain why the mistrial would be granted as to both when it noted the absence of [Orie's counsel] and immediately called a recess.

Upon counsel's arrival, he apologized for not being present and said that he thought he was to be called. The Court then gave him the opportunity to have the document examiner recalled to examine him, but counsel declined. The Court then said, 'I will hear what you want to say about a mistrial.' ( M.T. 3/3/11; p.38). Counsel made essentially the same argument he raises in this motion. He did not offer any alternatives other than to allow the jury to proceed to a verdict. He also raised the possibility of the jury having already reached a verdict as to his client. There was nothing to indicate that that had

occurred as the jury was instructed to stop deliberations.

Defense counsel's absence did not prejudice his client and did not deprive counsel of the opportunity to be heard on the issue of the mistrial. Counsel certainly bears some of the fault for not appearing when the Court indicated that the matter would resume. When counsel did arrive, the Court gave him the opportunity to examine the witness but he declined. The Court also heard argument from counsel regarding the issue of the mistrial. Counsel was given the opportunity to provide the Court with alternatives, but offered only that the trial continue as to his client.

Trial Court Opinion, 4/13/2011, at 2-7.

We conclude that Judge Manning did not abuse his discretion in declaring a mistrial *sua sponte* as to Orie at the first trial. For the reasons set forth by Judge Manning, manifest necessity for a mistrial existed, as the introduction of forged documents relating to a key prosecution witness constituted a fraud on the court, corrupting the trial as to both defendants. We cannot agree with Orie's contention that the forged documents "did not bear at all" on her guilt or innocence, Orie's Brief at 18, as Pavlot's credibility, or lack thereof, was central (and perhaps dispositive) of the charges against Orie. Judge Manning, who observed all of Pavlot's testimony, was in the best position to assess the impact that the introduction of the forged documents likely had on the jury's determination of her credibility. While Orie's counsel did not use the forged documents in his cross-examination of Pavlot, said cross-examination was nevertheless

extensive, and by Orie's admission, included a lengthy attack on Pavlot's credibility. *Id.* at 19. As a result, Orie certainly stood to benefit by her co-defendant's fraud on the court.

Moreover, we conclude that the mistrial was declared for the benefit of Orie. The trial court's reliance on *Wilson* was well placed in this regard since forged evidence is analogous to the "mug shot" evidence in that case:

> We agree with the court below that the circumstances of this case created the manifest necessity required by the rule, *supra*, and that it was done to protect the defendant from the 'mug shot' evidence. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). His reluctance to be so protected was motivated by trial strategy to assure a new trial in the event of conviction. The action of the court below "**was insuring that appellant would receive a trial by a fair and impartial jury which would return a verdict based solely on the evidence adduced at trial. This is an interest which is to be protected not only for defendants, but also for the public, which has a compelling interest in justice for all.**"

*Wilson*, 390 A.2d at 849 (emphasis added). The same rationale applies to this case and supports the conclusion that the mistrial was declared for the benefit of Orie.

Finally, based upon our review of the certified record, we cannot agree with Orie that she suffered any prejudice as a result of her counsel's absence from a portion of the proceedings on March 3, 2011. Counsel declined the opportunity to question the handwriting expert and offered, as the

alternative to the declaration of a mistrial, that the jury proceed to verdict as to Orie. Although delayed, counsel participated in the proceedings.

For her third issue on appeal, Orie argues that she "should never have been retried at CC201010286," since the retrial violated her constitutional right against double jeopardy under both the Pennsylvania and United States Constitutions." Orie's Brief at 27. She further contends that retrying her on the charges at CC201010286 "prejudiced her in a trial before the same jury at CC201115981." *Id.*

The nature of the issue Orie presents here is unclear. To the extent that Orie is reasserting the double jeopardy arguments in her first two issues on appeal and claiming that a retrial on the charges at CC201010286 was constitutionally barred, the claim is rejected for the reasons set forth hereinabove. Conversely, to the extent that she is contending that she was prejudiced by having the charges against her at both CC201010286 and CC201115981 tried together, we find she has not adequately preserved this issue for appellate review.

Procedurally, Rule 582 of the Pennsylvania Rules of Criminal Procedure governs the joinder of separate criminal indictments or informations. Rule 582 provides in relevant part:

> (1) Offenses charged in separate indictments or informations may be tried together if:
>
>> (a) the evidence of each of the offenses would be admissible in a separate trial

for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(a).  The severance of offenses is governed by Pa.R.Crim.P. 583, which states that the trial court "may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

Orie's appellate brief contains no argument, analysis, or citation to authority regarding the application of Rules 582 and 583 in this case.  As a result, this issue is waived.  *See, e.g.*, ***Commonwealth v. Brewington***, 740 A.2d 247, 252 n.2 (Pa. Super. 1999), *appeal denied*, 749 A.2d 465 (Pa. 2000).

For her fourth issue on appeal, Orie asserts that the trial court erred in instructing the jury on the topic of accomplice liability after closing arguments had been completed and the jury had begun its deliberations. Orie's Brief a 28.  For the reasons that follow, we conclude that the trial court's supplemental instruction to the jury violated Rule 647(A) of the Pennsylvania Rules of Criminal Procedure.  We further conclude, however, that Orie has not demonstrated actual prejudice resulting from this violation to be entitled to any relief on appeal.

- 18 -

On February 14, 2013, the trial court conducted a charging conference, at which time it provided the parties with a draft of its proposed charge to the jury and ruled on various requests for additional instructions. N.T., 2/14/2013, at 2679-2703. During this charging conference, the Commonwealth did not request a charge on "accomplice liability," ask that the term be defined, or otherwise object to the absence of a charge or definition. During its subsequent charge to the jury, the trial court used the word "accomplice" four times, all while summarizing the charges in the informations filed against the co-defendants. The first three references took place as the trial court reviewed the charges in the information filed against Orie Melvin:

> Count 1: Theft of Services. The actor, and when I use the term actor, I'm talking about [Orie Melvin]. It's a euphemism the legislature came up with. Having control over the disposition of services of others, namely actor's Superior Court Judicial staff, which she personally through [Orie] and [Jane Orie], ***accomplices pursuant to statute***, utilized to facilitate and promote the actor's political campaign for higher judicial office during the election cycles in both 2003 and 2009....

> Count 3: Theft of Services. The actor, having control over the disposition of services of another, namely, the Senatorial staff of [Jane Orie], which she personally and through [Orie] and [Jane Orie], ***accomplices pursuant to statute***, utilized to facilitate and promote the actor's political campaign for higher Judicial office during the election cycles in both 2003 and 2009....

> Count 5: Misapplication of Entrusted Property or Property of Government or Financial Institutions. The actor applied or disposed of property valued at more than $50, namely, personally and through [Orie], **an accomplice pursuant to statute**, used her Superior Court office facilities and office equipment to facilitate and promote the actor's political campaign activities in her bid for higher judicial office in both 2003 and 2009....

N.T., 2/15/2013, at 2776-79 (emphasis added).

The fourth reference to "accomplice" occurred as the trial court reviewed the second count in the information filed against Janine Orie at CC201010286:

> Count 2: Theft of Services. [Orie], **as an accomplice pursuant to the statute**, having control over the disposition of the services of others, namely, certain members of the legislative staff of Senator [Jane Orie], did knowingly direct or cause to be directed those employees of the Commonwealth of Pennsylvania … to engage in political fundraising and/or political campaign work, … on behalf of [Orie Melvin's] 2009 Judicial campaign, knowingly diverting said services to the benefit of another not entitled thereto.

*Id.* at 2785 (emphasis added).

The jury began deliberations after the trial court completed its charge, and later that day it posed a question concerning the "the definitions as to what [the trial court] read to us." N.T., 2/15/2013, at 2817.

THE COURT: What is it you want defined, Mr. [Foreman]?

FOREMAN: What we are asking is to have the definitions as to what you read to us. We all have the counts that we wrote down, but what we want is the

definitions, the one through four which you read to us.

A JUROR: It was the criteria that you read under each, in order to meet this, number one, number two, number three.

THE COURT: You want the crimes?

THE JURY: Yes.

THE COURT: Here is what I'm going to do. I'll will [*sic*] basically reproduce what I gave you. I'll send that up, along with the Informations.

*Id.*

In the discussion between counsel and the trial court regarding how to respond to the jury's inquiry,[3] counsel for the Commonwealth, for the first time, asked the trial court to offer an expanded instruction on accomplice liability.

MR. CLAUS: Judge, I have a notice that accomplice was obviously read by you as part of the charges. That is part of the standard charging, and I thought if that's what —

THE COURT: Well, you are little late, Mr. Claus, don't you think?

MR. CLAUS: Well—

THE COURT: Yeah, I do.

---

[3] After a review of the Pennsylvania Rules of Criminal Procedure, including in particular Rule 646(C)(3), the trial court reconsidered its initial decision to provide the jury with the informations. N.T., 2/19/2013, at 2837. Instead, the trial court prepared a handout for the jury, agreeable to the parties, listing the elements and defenses for each charge. *Id.* at 2841.

N.T., 2/15/2013, at 2820. Although the trial court initially indicated that the request for an instruction on accomplice liability was too late, it agreed to consider it over the holiday weekend. On the following Tuesday morning, the trial court stated that it had reconsidered and would read to the jury an instruction provided in writing by the Commonwealth, to which counsel for Orie and Orie Melvin both objected.[4] *Id.* at 2838. The trial court denied these objections and instructed the jury as follows:

> I used the term, and you will see in the document that you get, of accomplice, and I did not define it for you. There is a way that one defendant can be proven liable for the conduct of another person or persons, and that is when the defendant is an accomplice of the person who actually commits the crime at issue. To be an accomplice, a person does not have to agree to help someone else. The person is an accomplice if he or she on his or her own acts to help the other person commit a crime.
>
> More specifically, you may find a defendant is an accomplice of another in this case if the following two elements are proved beyond a reasonable doubt.
>
> One, that the defendant had the intent of promoting or facilitating the commission of the offense; and two, that the defendant solicits, encourages, requests the other person to commit it, or aids the other person in planning or committing it. Accomplice liability must be assessed separately for each crime charged if two or more crimes are committed. The defendant before you is being charged as an accomplice for each of those crimes. He or she may not be found liable unless it is shown that each individual crime, that this defendant had

---

[4] Both counsel objected to the giving of the charge itself, but not to any of the specific language contained therein.

the intent of promoting the specific crime and then solicited, encouraged, requested the other person to commit it, or aided the other person in planning or committing it.

In other words, you must decide whether the prosecution proved beyond a reasonable doubt that this defendant was an accomplice for the first crime or the second crime, et cetera.

It is important to understand that a person is not an accomplice merely because he or she is present when a crime is committed, or knows that a crime is being committed. To be an accomplice, the defendant must specifically intend to help bring about the crime by assisting another in its commission.

A person who is an accomplice will not be responsible for a crime if and only if the person[,] before the other person commits the crime[,] either stops his or her own effort to promote or facilitate the commission of a crime, and either wholly deprives his or her previous efforts in effectiveness in the commission of the crime, or gives timely warnings to law enforcement.

N.T., 2/19/2013, at 2842-44.

Thereafter, on February 21, 2013, the jury asked two questions regarding accomplice liability in Orie's case, namely "can we get a more defined explanation of 'accomplice?'" and "[c]an it be applied to any of the charges?" The trial court then instructed the jury, without objection, as follows:

Ladies and gentlemen of the jury, to be an accomplice, a person does not have to agree to help someone else. The person is an accomplice if he or

she on his or her own acts to help the other person commit the crime knowingly.

More specifically, you may find the defendant is an accomplice of another in this case if the following two elements are proven beyond a reasonable doubt. A, that the defendant had the intent of promoting or facilitating the commission of the offense of theft of services and, two, that the defendant solicits, commands, encourages, requests the other person to commit it or aids, agrees to aid or attempts to aid the other person in planning or committing it.

It is important to understand that a person is not an accomplice merely because he or she is present when a crime is committed or knows that a crime is being committed. To be an accomplice, the defendant must specifically intend to help bring about the crime by assisting another in its commission.

N.T., 2/21/2013, at 2852-53.

Rule 647(A) provides as follows:

(A) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.

Pa.R.Crim.P. 647(A).

Rule 647(A)[5] was amended in 1985 to change prior practice, pursuant to which the trial court did not rule on proposed jury instructions until after counsel for the parties had completed their closing arguments to the jury. As this Court recognized in **Commonwealth v. Hendricks**, 546 A.2d 79 (Pa. Super. 1988), *appeal denied*, 559 A.2d 35 (Pa. 1989),

> The difference in the procedure following the 1986 amendment is that the court now is **required** to rule on proposed written jury instructions before closing arguments and charging the jury whereas under the old procedure the court ruled on the requested jury instructions **after** closing arguments and the charge to jury.

**Id.** at 81 (emphasis in original). Noting that Rule 647(A) effectively mirrors Rule 30 of the Federal Rules of Criminal Procedure, this Court in **Hendricks** indicated that under both rules, the trial court "is required to rule on all proposed jury instructions prior to charging the jury and closing summations." **Id.** We further recognized that "[t]he purpose of this rule is to require the judge to inform [counsel] in a fair way what the charge is going to be, so that they may intelligently argue the case to the jury." **Id.** (citing **United States v. Wander**, 601 F.2d 1251, 1262 (3d Cir. 1979)); **see also Commonwealth v. Alston**, 748 A.2d 677, 679 (Pa. Super. 2000) (same). At bottom, the rule requires the trial court to provide the parties with adequate notice of the instruction before closing argument, and the rule

---

[5] On March 1, 2000 (effective July 1, 1985), Rule 1119(A) was renumbered as Rule 647(A). Pa.R.Crim.P. 647 Credits.

is plainly violated when the trial court presents a new theory of liability, or otherwise materially modifies the original instructions, after closing arguments have been completed. **See generally United States v. Smith**, 789 F.2d 196, 202 (3d Cir. 1986).

The trial court's decision to issue a supplemental instruction to the jury on accomplice liability in this case after closing arguments violated Rule 647(A). As indicated hereinabove, at no time prior to closing arguments did the trial court advise counsel that it intended to include detailed instructions to the jury on accomplice liability, and the Commonwealth did not request a charge on accomplice liability or object to the absence of such a charge. It was only after closing arguments that the Commonwealth first requested that the trial court instruct the jury, through a supplemental charge, that Orie could be convicted as an accomplice. Under Rule 647(A), the trial court could not materially modify its initial charge to the jury after closing arguments had been completed.

A violation of Rule 647(A), however, does not *ipso facto* mandate a reversal for a new trial. In **Alston**, this Court reviewed its prior decision in **Hendricks** before concluding that "prejudice is indeed a mandatory component" of a Rule 647(A) inquiry.

> [T]he **Hendricks** court quoted federal case law when it stated that '[f]ailure of the court to comply with Rule 30 requires the granting of a new trial if 'counsel's closing argument was prejudicially affected thereby.'' **Id.** (quoting **United States v. McCown**,

711 F.2d 1441, 1452 (9th Cir. 1983)). Further, the **Hendricks** court analyzed in great detail the jury instruction requests made by counsel and the closing argument made to the jury, drawing a nexus between the court's error and counsel's specific statements. Finally, the **Hendricks** holding is quite clear: 'Accordingly, we conclude that the court's failure to inform counsel of its ruling on the requested points for charge prior to closing arguments and the jury instruction, was prejudicial to appellant's defense and warrants that a new trial be granted.' **Id.** at 83. In light of all of these factors, we hold that Rule [647] relief is not warranted unless prejudice has been established.

**Alston**, 748 A.2d at 679.[6] Federal courts have likewise held that a "violation of Rule 30 requires reversal only when the defendant can show actual prejudice." **United States v. Benson**, 2006 WL 2520612, at *14 (E.D. Pa. 2006) (quoting **United States v. Horton**, 921 F.2d 540, 547 (4th Cir. 1990)). In **United States v. Gaskins**, 849 F.2d 454 (9th Cir. 1988), the federal court framed the question as "whether the district judge's decision to give the aiding and abetting instruction during jury deliberations,

---

[6] We reject the trial court's contention that no prejudice resulted because the jury had only been deliberating for a short time before receiving the supplemental instruction. Trial Court Opinion, 9/12/2013, at 28 ("Any harm that occurred was minimal and not prejudicial since the jury only deliberated a short time before this [c]our gave the expanded instruction of accomplice liability."). As **Hendricks** makes clear, the potentially prejudicial aspect of a trial court's decision to provide additional instructions after closing arguments is that it interferes with counsel's ability to tailor his or her closing arguments to the trial court's actual jury charge. **Hendricks**, 546 A.2d at 81 ("It [is] the court's failure to advise counsel of its ruling prior to closing argument, not the soundness of that ruling, which violate[s] Rule 30 and prejudicially affect[s] counsel's summation.") (quoting **Wright v. United States**, 339 F.2d 578, 580 (9th Cir. 1964)).

after initially stating at the Rule 30 hearing that he would not, unfairly prevented Gaskin's counsel from arguing against an aiding and abetting theory to the jury." *Id.* at 460.

In accordance with this standard, Orie contends that she was prejudiced because she relied upon the absence of an accomplice liability instruction in preparing for closing argument. Orie's Brief at 32. She argues that "[h]ad the defense known that the trial court would reverse course and introduce the concept of accomplice liability after closing arguments concluded," her counsel "would have directly addressed the issue in the closing." *Id.*

Before proceeding to consider Orie's contention that she suffered actual prejudice resulting from the trial court's clear error, we must note that Orie arguably waived this claim by failing to request the opportunity to offer additional argument to the jury to address the supplemental charge after being informed that it would be given. Although this issue has not been discussed by any Pennsylvania appellate courts in connection with Rule 647(A), federal courts have held that prejudice resulting from violations of Federal Rule of Criminal Procedure 30 may in some cases be ameliorated or eliminated by permitting counsel the opportunity for supplement argument to the jury. *See, e.g.*, *United States v. Fontenot*, 14 F.3d 1364, 1368 (9th Cir. 1994) (when "a new theory is presented to the jury in a supplemental instruction after closing argument, the court generally should

- 28 -

give counsel time for additional argument") (quoting **United States v. Horton**, 921 F.2d 540, 547 (4th Cir. 1990)); **United States v. Civelli**, 883 F.2d 191, 196 (2d Cir. 1989) ("[T]he principles that underlie Rule 30 may very well require that the district court allow further argument after an instruction has been given."); **United States v. Gaskins**, 849 F.2d 454, 457 (9th Cir. 1988) (new trial granted for violation of Rule 30 after the district court denied defense counsel's request to reopen closing argument); **Vazquez v. Adams**, 2011 WL 3420644, at *6 (C.D. Cal. June 27, 2011), *report and recommendation adopted*, 2011 WL 3419562 (C.D. Cal. Aug. 1, 2011) (same); **but see Cruz v. State**, 963 A.2d 1184, 1192 (Maryland 2009) ("We are not persuaded that a supplemental closing argument would have cured the problem created by the court's eleventh hour insertion of this new theory of culpability."). Because neither party raised or briefed the waiver issue, out of an abundance of caution we will proceed to consider Orie's claim of actual prejudice on its merits.

On its merits, we must conclude that Orie has not established actual prejudice to entitle her to a new trial. In this regard, we begin by noting that in connection with Count 2 of CC201010286, Orie was charged as an accomplice in the theft of services from the legislative offices of Jane Orie for the benefit of Orie Melvin's 2009 political campaign. As set forth hereinabove, in its charge to the jury, the trial court advised that under Count 2 Orie was charged "as an accomplice" with knowingly directing

certain members of Jane Orie's legislative staff to engage in political fundraising and campaign work on behalf of Orie Melvin's 2009 judicial campaign. N.T., 2/15/2013, at 2785. Accordingly, the Commonwealth's closing argument described Orie as "an accomplice of other individuals in this case," and contended that Orie was "answerable as an individual, accomplice liability, for the work that was done in promoting and using the staff of the Legislative office of [Jane Orie] for [Orie Melvin's] campaign." *Id.* at 2767.

Counsel for Orie addressed the accomplice liability charge under Count 2 in her closing argument to the jury. As a general matter, counsel argued that the witnesses offering testimony against Orie lacked credibility, that she had no involvement whatsoever with the events in question, that she was instead merely a secretary in her sister's office, and that she was on trial only because her name was "Orie" and her sisters were Orie Melvin and Jane Orie. *See, e.g.*, N.T., 2/15/2013, at 2734 ("Is she anything more than collateral damage? Anything more than a patsy who gets put into this because of her name, because of her family?"). More specifically with regard to Count 2, counsel reviewed the testimony of three members of Jane Orie's legislative staff in an effort to show that Orie had little or no contact with them and thus could not have directed them to engage in any wrongdoing. With respect to witness Audrey Rasmussen Mackie, counsel argued that her testimony showed that she had "virtually no contact" with Orie and asked

the jury "how then could [Orie] be responsible for any theft involving Audrey Rasmussen Mackie?" *Id.* at 2729. With respect to legislative staffer Josh Dott, counsel contended that if he engaged in any improper political activity during the 2009 election, "he certainly didn't do it on orders of [Orie]." *Id.* at 2730, 2732 ("There is nothing with Josh Dott where he is controlled in any way by [Orie]."). And with respect to witness Jennifer Rioja, the intern on Jane Orie's staff who first reported alleged improprieties to the Allegheny County District Attorney's office, Orie's counsel reminded the jury that Rioja never even mentioned Orie when describing the wrongdoing in the legislative office. *Id.* at 2733 ("[Rioja] [n]ever once mentioned the name [Orie].").

In our view, this closing argument by counsel for Orie constituted an attempt to refute the accomplice liability charge against her. While Orie now contends that her counsel would have "directly addressed" accomplice liability in the closing argument if a more complete charge on this theory of criminal liability had been included in the trial court's initial instruction, on appeal she offers no explication as to what the contents of such an expanded argument would have included, what other evidence could have been used in support thereof, or how it would have differed materially from the actual closing argument by her counsel at trial. As such, Orie has not provided this Court with any basis on which to evaluate the degree (if any) of any actual

prejudice resulting from the trial court's error. Accordingly, we cannot grant the requested relief on this issue.

For her fifth issue on appeal, Orie contends that the requirement that she write apology letters is not a part of her sentence because it was not included in the written sentencing order. We agree. The trial court sentenced Orie by written order dated May 7, 2013, and this written order makes no mention of any requirement or condition that she write apology letters. The trial court did not thereafter amend its written sentencing order to include such a requirement or condition.[7]

Where there is a discrepancy between the sentence as written and as orally pronounced, both this Court and our Supreme Court have consistently and without exception held that the terms of the written sentence signed by the sentencing judge controls. *See, e.g.*, *Commonwealth v. Isabell*, 467 A.2d 1287, 1292 (Pa. 1983) ("Generally, the signed sentencing order, if legal, controls over oral statements of the sentencing judge not incorporated into the signed judgment of sentence."); *Commonwealth v. Willis*, 68 A.3d 997, 1010 (Pa. Super. 2013) ("It is well settled that, where there is a discrepancy between the sentence as written and orally pronounced, the written sentence generally controls.") (quoting *Commonwealth v. Gordon*,

---

[7] On May 14, 2013, the trial court entered an order setting forth in detail the amount of restitution, fines, and costs to be paid by Orie. Order of Court, 5/14/2013, at 1-2. Said order does not purport to amend the May 7, 2013 sentencing order and makes no mention of any requirement that Orie write letters of apology.

897 A.2d 504, 507 (Pa. Super. 2006)); ***Commonwealth v. Quinlan***, 639 A.2d 1235, 1239 (Pa. Super. 1994) (same), *appeal dismissed*, 675 A.2d 711 (Pa. 1996); ***Commonwealth v. Hodge***, 369 A.2d 815, 820 (Pa. Super. 1977) (an oral pronouncement of sentence is not a "sentence imposed" until incorporated in a signed written judgment). ***Commonwealth v. Foster***, 324 A.2d 538, 539 (Pa. Super. 1974) ("Oral statements made by the judge in passing sentence, but not incorporated in the written sentence signed by [the sentencing judge], are not part of the judgment of sentence.").

Judgment of sentence affirmed in accordance with the dictates of this Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2014

- 33 -