J. A21023/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LOUIS RODERICK OGDEN, | : | |
| | : | |
| Appellant | : | No. 3148 EDA 2015 |

Appeal from the Judgment of Sentence September 22, 2015
In the Court of Common Pleas of Wayne County
Criminal Division at No.: CP-64-CR-0000319-2014

BEFORE: BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 11, 2016**

Appellant, Louis Roderick Ogden, appeals from the Judgment of

Sentence entered by the Wayne County Court of Common Pleas following his

conviction by a jury of First-Degree Murder.  After careful review, we affirm.

The relevant facts, as gleaned from the certified record and the trial

court's Pa.R.A.P. 1925(a) Opinion, are as follows.  On the morning of June

20, 2014, Rebecca Pisall, Appellant's 20-year-old niece, arrived at

Appellant's home in Lake Ariel to purchase heroin from Appellant.  After a

brief conversation in the kitchen with Rebecca, Appellant's daughter, Mary

Langendorfer, who lived with Appellant, woke Appellant up and told him

Rebecca wanted to purchase heroin.  Appellant then tossed a small black

bag containing heroin at Mary and told Mary to "take care of it."  N.T. Trial,

9/21/15, at 9-10.  Mary took the heroin into the kitchen, gave Rebecca three

bags of heroin in exchange for $60, put the money in the black bag, and returned the black bag to Appellant. *Id*. at 10.

When Mary returned to the kitchen, Rebecca claimed that the bags were empty and demanded her money back. Mary returned to Appellant and, after learning of Rebecca's complaint, Appellant pulled a loaded gun from underneath his pillow, walked into the kitchen, pointed the gun at Rebecca, and fatally shot Rebecca in the forehead from 4-8 inches away. Appellant then pointed the gun at Mary's throat and said, "it just went off" in an "angry tone like he was telling [Mary] what to do." *Id*. at 13.

Appellant called 911 shortly thereafter and Appellant, who was very upset, admitted during the call that he had shot Rebecca in the head. *Id*. at 34-37, 40. Appellant provided a Mirandized[1] statement to Pennsylvania State Trooper Sharon Palmer, admitting all of the above facts but stating that he had: (1) traveled to Philadelphia the night before the shooting to purchase heroin; (2) used twenty bags of heroin while in Philadelphia; (3) returned to his house in Wayne County and went to sleep; and (4) only wanted to scare Rebecca when the gun went off accidentally. He also admitted to being familiar with guns and gun safety. N.T. Trial, 9/21/15, at 58-74; Commonwealth Exhibit 6.

At Appellant's jury trial on September 21 and 22, 2015, the Commonwealth presented testimony from Appellant's daughter Mary; 911

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

dispatcher Forest Mohn; Pennsylvania State Troopers Sharon Palmer, Gerald Gustas, and Sean Doran, and Corporal Michael Brown; and forensic pathologist Dr. Gary Ross. The trial court admitted Appellant's statement to police into evidence. Appellant presented no evidence.

On September 22, 2015, the jury convicted Appellant of First-Degree Murder[2] and the trial court imposed the statutorily mandated sentence of life in prison.[3] After the denial of his Post-Sentence Motion, Appellant filed a timely Notice of Appeal on October 16, 2015. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents four issues for our review:

1. Did the Court below err in not instructing the jury regarding the Appellant's Involuntary or Voluntary Intoxication (8.308B & 8.308C), which would have instructed the jury of the possibility of a finding of Third[-]Degree Murder or Voluntary Manslaughter in this case, based upon the level of drugs consumed by the [Appellant] prior to the shooting of the victim?

2. Did the Trial Court err and abuse its discretion, as well as deny the Appellant due process, in denying the [Appellant's] Motion for Post[-]Trial Relief pursuant to Pa.R.Crim.P. 606 seeking a judgment of acquittal and/or for a new trial with regard to the sufficiency of the evidence presented at trial, as the Commonwealth did not meet its burden of proof that the [Appellant] acted with premeditation, and the evidence was insufficient to prove specific intent to kill and/or malice, beyond a reasonable doubt, as required to permit a conviction of First[-]Degree Murder?

---

[2] 18 Pa.C.S. § 2501; 18 Pa.C.S. § 2502(a).

[3] 42 Pa.C.S. § 9711.

3. Did the Trial Court err in denying the Appellant's Motion for Post-Trial Relief seeking a new trial, in light of the fact that the jury only deliberated for 10 or 11 minutes before returning a verdict of guilty?

4. Did the Trial Court err and abuse its discretion, as well as deny the Appellant due process, in denying the Appellant's Motion to Strike the Jury Panel following a prospective juror uttering words to the effect of "if he made it this far, I'd figure he'd have to be guilty", which resulted in actual prejudice to the [Appellant] and the polluting of the remaining pool of jurors, from which the jury was chosen which ultimately heard the instant case?

Appellant's Brief at 4-5 (numbering added).

Appellant first avers that the trial court erred in failing to instruct the jury regarding voluntary and involuntary intoxication based on evidence that Appellant had used twenty bags of heroin the night before the shooting. Our standard of review in assessing a trial court's jury instruction is as follows:

When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that[] it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014). "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013).

The Crimes Code discusses the ramifications of voluntary intoxication as follows:

**Intoxication or drugged condition**

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

18 Pa.C.S. § 308.

This Court has previously made clear that "a jury instruction regarding diminished capacity due to voluntary intoxication is justified **only** when the record contains evidence that the accused was intoxicated to the point of losing his or her faculties or sensibilities." *Commonwealth v. Padilla*, 80 A.3d 1238, 1263 (Pa. 2013) (emphasis in original). Evidence that an accused ingested alcohol or an intoxicating drug does not warrant a voluntary intoxication instruction without more. *Id*.

In support of his contention that the court should have given an intoxication jury instruction, Appellant relies on testimony from Trooper Palmer about Appellant's written statement, in which Appellant stated that he had used twenty bags of heroin the night before the shooting. He also relies on photographs and testimony from Trooper Gustas regarding drugs, drug packaging, and drug paraphernalia recovered from Appellant's home. N.T. Trial, 9/21/15, at 67; 91. Although there was testimony that Appellant

- 5 -

was very upset when he called 911, there was no testimony or evidence that Appellant's purported drug use the previous night overwhelmed or overpowered his faculties or sensibilities in any way. Corporal Brown and Trooper Palmer testified that Appellant appeared sober in the back of the patrol car at Appellant's home shortly after the shooting, during the ride to state police barracks, as well as during his interview and when he gave his statement at the state police barracks later that day. N.T. Trial, 9/21/15, at 46-47, 51-52, 63-64. Likewise, there was absolutely no evidence that Appellant was involuntary intoxicated at the time of the shooting.

Accordingly, Appellant was not entitled to an instruction on voluntary or involuntary intoxication and the trial court did not err in refusing to provide such instructions to the jury.

In his second issue, Appellant avers "that the evidence was insufficient to sustain his conviction" for First-Degree Murder because the Commonwealth did not prove the elements of premeditation and specific intent to kill. Appellant's Brief at 20, 23.

We review challenges to the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014). The trier of fact—while passing on the credibility of the witnesses and the weight of

the evidence—is free to believe all, part, or none of the evidence. *Id*. at 40. Moreover, the trier of fact may base a conviction solely on circumstantial evidence. *Id*. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for that of the fact-finder. *Id*.

Section 2502(a) of the Crimes Code defines First-Degree Murder as follows:

> (a) Murder of the first degree.--A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S. § 2502(a). First-Degree Murder is an intentional killing, *i.e.*, a "willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(a), (d). In order to prove First-Degree Murder, the Commonwealth must establish that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill. ***Commonwealth v. Sanchez***, 82 A.3d 943, 967 (Pa. 2013) (citations omitted).

In reviewing whether the evidence was sufficient to support a First-Degree Murder conviction, we must evaluate the entire trial record and consider all evidence. *Id*. ***See, e.g., Commonwealth v. Hall***, 701 A.2d 190, 195-97 (Pa. 1997) (holding evidence sufficient to support First-Degree Murder conviction and elements of malice and the specific intent to kill where defendant shot the victim in the head from 4-10 inches away during a robbery, killing the victim, and defendant later admitted to shooting the victim).

A jury may infer the intent to kill based upon the defendant's use of a deadly weapon on "a vital part of the victim's body." ***Sanchez, supra*** at 967.

In the instant case, there was sufficient evidence to support Appellant's conviction for First-Degree Murder. Appellant admitted in an inculpatory Mirandized statement provided to police that he had shot his niece in the head at point-blank range in the midst of a drug dispute which resulted in her death. The jury properly inferred an intent to kill based on Appellant's shooting Rebecca in "a vital part of the body." That inference was further supported by his daughter's testimony regarding Appellant's threatening behavior immediately after the shooting. Viewing the totality of the evidence in the light most favorable to the Commonwealth as the verdict winner, it is clear that the Commonwealth proved each element of the offense. Appellant's sufficiency challenge, thus, fails.

In his third issue on appeal, Appellant avers that the trial court erred in denying his Post-Sentence Motion, arguing the brevity of the jury's deliberations mandated a new trial based on jury bias.

The denial of a Post-Sentence Motion seeking a new trial on the grounds of alleged juror misconduct is largely within the discretion of the trial judge, and we will not reverse absent an abuse of that discretion. ***Commonwealth v. Russell***, 665 A.2d 1239, 1243 (Pa. Super. 1995). It is well settled that the length of the deliberation of a jury is wisely left to the

sound discretion of the trial court and we will reverse only if we find an abuse of that discretion, or that the verdict was the product of coercion or of an overworked and fatigued jury. ***Commonwealth v. Penn***, 439 A.2d 1154, 1161 (Pa. 1982) (quotation and citations omitted).

This Court has previously held that "[t]here is no requirement of the law … prohibiting [a jury] from the immediate pronouncement of its verdict. The requirement is that it be unanimous, as it was here, and it may be pronounced … without long consultation." ***Commonwealth ex rel. Sharpe v. Burke***, 101 A.2d 397, 400 (Pa. Super. 1953).[4]

Although Appellant "admits that he knows of no rule of law which requires a jury to deliberate for any particular length of time," he contends that the jury's ten or eleven minute deliberation time "is a useful signal of jury bias[,]" particularly when considering the severity of the offense and the resulting sentence of life in prison. Appellant's Brief at 25-27.

It is undeniable that Appellant faced a serious charge. However, the evidence presented at trial was straight-forward, the witnesses were few,

---

[4] Other jurisdictions have rejected challenges to the jury's verdict based on the brevity of the jury's deliberations. ***See, e.g., Kimes v. U.S.***, 240 F.2d 301, 302 (5th Cir. 1957) (twenty minutes' deliberations); ***U.S. v. Young***, 301 F.2d 298, 299 (6th Cir. 1962) (four minutes' deliberations); ***U.S. v. Brotherton***, 427 F.2d 1286, 1289 (8th Cir. 1970) (five to seven minutes' deliberations); ***Wall v. U.S.***, 384 F.2d 758, 762 (10th Cir. 1967) (one hour of jury deliberations despite 8 day jury trial); ***State v. Ballard***, 315 A.2d 45, 46 (N.J. Super. Ct. App. Div. 1974) (fifteen minutes' deliberations); ***State v. Mosier***, 490 P.2d 471, 474 (N.M. Ct. App. 1971) (ten minutes' deliberations).

the trial was relatively short, and the issues were not complex. The trial court properly instructed the jury on the applicable law, and we presume the jury followed those instructions. *See Commonwealth v. Tedford*, 960 A.2d 1, 37 (Pa. 2008) (holding that a jury is presumed to follow a trial court's instructions). There is no evidence that the verdict was the "product of coercion or of an overworked and fatigued jury." *Penn*, *supra* at 1161. Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's Post-Sentence Motion based upon the brevity of the jury's deliberations.

In his fourth and final issue, Appellant avers that the trial court erred in denying his Motion to Strike the Jury Panel[5] after a venire person purportedly uttered, "if [Appellant] made it this far, I'd figure he'd have to be guilty." Appellant's Brief at 28. Appellant contends that such a statement in front of the entire venire during *voir dire* tainted the entire jury panel and prevented the seated jurors from being fair and impartial. *Id*. Appellant does not allege that the trial court actually seated the venireperson who made this comment on his jury.

The jury selection process is crucial to the preservation of a criminal defendant's right to an impartial jury explicitly guaranteed by Article I, section 9 of the Pennsylvania Constitution. *Commonwealth v. Ingber*,

---

[5] Appellant avers that he made his Motion to Strike the Jury Panel during *voir dire* sometime after the venire person uttered the comment. However, the certified record does not contain the transcripts from the *voir dire*.

531 A.2d 1101, 1102 (Pa. 1987). The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion. *Id*. at 1103 (citations omitted).

The test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence. ***Commonwealth v. Penn***, 132 A.3d 498, 502 (Pa. Super. 2016). The decision whether to disqualify a venireperson "is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion." ***Id***. (citation omitted).

Here, the trial court concluded there was no basis to strike the jury panel. The court emphasized that, when asked whether there was any reason why any member of the empaneled jury could not sit as a fair and impartial juror, no one raised his or her hand. Likewise, when ask if they could "listen to the evidence as it came from the witness stand, listen to the judge's instructions as to the law[,] and base their decision on that," no juror indicated otherwise. Trial Court Opinion at 4.

Appellant points to no evidence that the trial court seated the venire person in question as a juror at trial. Appellant points to no evidence that any specific juror displayed bias or impartiality during *voir dire* or during the trial. Appellant's argument of jury bias is speculative at best. The trial court did not abuse its discretion in refusing to strike the entire venire.

J. A21023/16

Because we conclude that the trial court properly exercised its discretion and find no merit to the issues raised, we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2016

- 12 -