J-A25039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA J. MARTI, | : | |
| | : | |
| Appellant | : | No. 123 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 20, 2018
in the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0003884-2018

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED JANUARY 13, 2020**

Joshua J. Marti ("Marti") appeals from the judgment of sentence entered following his conviction of forgery.[1]  We affirm.

On May 8, 2018, Marti and a man known only as "Mark"[2] ordered food at a Burger King drive-through in Lancaster, Pennsylvania.  Marti was seated in the front passenger seat and Mark was driving.  Mark and Marti ordered between $15 and $20 worth of food, then pulled the vehicle up to the drive-through window.  Tristan Johnson ("Johnson"), who was working the drive-through window that night, greeted Mark and Marti at the window.  Johnson witnessed Marti pull a purported $20 bill ("the counterfeit bill") from his wallet, and hand it to Mark, who then handed it to Johnson.

---

[1] 18 Pa.C.S.A. § 4101(a)(3).

[2] Marti testified that he did not know Mark's last name and that he was unable to contact Mark after May 8, 2018.

After Johnson received the counterfeit bill from Mark, Johnson instantly recognized the bill as counterfeit. He testified at trial that it "didn't look anything like I've ever seen. It wasn't a regular $20 bill. It felt chunky." Johnson told Marti that the counterfeit bill was not real. Marti told Johnson that it was real, and asked to speak to a manager.

Molly Otero ("Otero") was working as an assistant manager of the Burger King that night. Otero appeared in the drive-through window, glanced at Mark and Marti, and inspected the counterfeit bill. When Otero appeared in the drive-through window, Marti pulled his sweatshirt hood over his head, and turned his face away from the drive-through window. Otero had recognized Marti as a former employee, and told Marti that the bill was fake. Marti passed Mark a different $20 bill, who handed it to Johnson. Johnson accepted the new bill as genuine U.S. currency, and handed Mark the food they had ordered. Marti asked for the counterfeit bill back, but Johnson refused, and kept the counterfeit bill. Mark and Marti then drove away.

Marti was later arrested and charged with forgery. Neither the police, nor Marti, were able to locate Mark. Following a non-jury trial, Marti was found guilty of forgery. The trial court sentenced Marti to two years of probation. Marti filed post-sentence Motions challenging the weight and sufficiency of the evidence, which the trial court denied. Marti filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Marti raises the following questions for our review:

1. Was the verdict for forgery for possession of and passing a counterfeit $20[] bill in violation of 18 Pa.C.S.A. [§] 4101(a)(3), a felony of the second degree, not supported by sufficient evidence? Was the verdict based on speculative and conflicting testimony[,] and was there no evidence that [] Marti was aware [that] the [counterfeit] bill was [counterfeit]?

2. Was the verdict for forgery for possession of and passing a counterfeit $20[] bill in violation of 18 Pa.C.S.A. [§] 4101(a)(3), a felony of the second degree, against the weight of the evidence? Was the verdict based on speculative and conflicting testimony, and was there no evidence that [] Marti was aware the [counterfeit] bill was counterfeit? Should this verdict shock the conscience of the Court?

Brief for Appellant at 5.

In his first claim, Marti argues that the Commonwealth failed to present sufficient evidence to establish that (1) Marti knew the counterfeit bill was counterfeit, and (2) Marti, and not Mark, attempted to pay with the counterfeit bill. *See id.* 35-44. Marti argues that the counterfeit bill was not obviously a counterfeit, and that there was conflicting testimony regarding who attempted to pay with the counterfeit bill. *Id.* at 37-44.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder[,] unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element

- 3 -

of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, or part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted). "We may look to the totality of the defendant's conduct to infer fraudulent intent. Circumstantial evidence is sufficient to establish the defendant's knowledge that the document is a forgery." *Commonwealth v. Green*, 203 A.3d 250, 253 (Pa. Super. 2019).

Here, Johnson testified that he observed Marti take the counterfeit bill out of his wallet, and hand it to Mark, who then handed it to Johnson. *See* N.T., 12/20/18, at 12-15, 26-27. Johnson, who was not admitted as an expert in counterfeit currency, stated that the counterfeit bill "didn't look anything like [he had] ever seen. It wasn't a regular $20 bill. It felt chunky." *Id.* at 13. When asked again what the bill felt like, Johnson said it felt "chunky; like really pressed-on-hard crayon." *Id.* at 15. Johnson stated that he told Marti that the counterfeit bill was not real, but Marti maintained that it was real. *Id.* at 17-18, 21-22, 35. Marti instructed Johnson to get his manager, Otero, who also believed the counterfeit bill was fake. *Id.*; *see also id.* at 36, 43. Otero testified that she recognized Marti as a former employee, and that when Marti saw her, he attempted to hide his face under his hood. *Id.* at 44-47, 53; *see also id.* at 18-19 (wherein Johnson states that Marti put his hood up

and turned away from the drive-through window upon seeing Otero). After paying with a real $20 bill, Marti attempted to retrieve the counterfeit bill from Johnson. *Id.* at 21-22, 46-47.

Viewing the evidence in a light most favorable to the Commonwealth, this evidence was sufficient to establish that Marti knew the counterfeit bill was counterfeit, and that Marti, and not Mark, attempted to pay with the counterfeit bill. *See Melvin*, *supra*; *Green*, *supra*. Accordingly, Marti's first claim fails.

In his second claim, Marti alleges that the verdict was against the weight of the evidence. *See* Brief for Appellant at 44-48. Marti makes the same argument as in his first claim, alleging that the evidence was conflicting as to whether Marti knew the bill was counterfeit, and whether Marti, and not Mark, attempted to pay with the counterfeit bill. *Id.* In particular, Marti argues that the trial testimony of the Commonwealth's witnesses was inconsistent with their statements to police.

> The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review

of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted).

Here, the trial court, sitting as fact-finder, was free to assess the credibility of the Commonwealth's witnesses in rendering the verdict. ***See Gonzalez***, ***supra***. Based on the record, the trial court's decision is supported by the evidence, and does not shock one's sense of justice. ***See Commonwealth v. Gibbs***, 981 A.2d 274, 282 (Pa. Super. 2009) (stating that "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review."). Thus, the trial court did not abuse its discretion in denying Marti's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/13/2020

- 6 -