J-S15026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYLAN CHRISTOPHER BLAIR | : | |
| | : | |
| Appellant | : | No. 741 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 18, 2020
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0002833-2017

BEFORE: LAZARUS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: JULY 1, 2021**

Dylan Christopher Blair (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of drug delivery resulting in death and two counts of delivery of a controlled substance.[1] We affirm.

The trial court detailed the underlying facts and procedural history as follows:

> The instant case arises out of the death of Michele Spillar on December 25, 2016 in Derry, Westmoreland County. The evidence presented at trial established that on December 25, 2016, Ms. Spillar was found deceased as a result of a drug overdose. During trial, Dr. Cyril Wecht, who was admitted a[s] an expert in the field of forensic pathology, testified that in his opinion, Ms. Spillar died as a result of fentanyl toxicity. Dr. Wecht confirmed that other medications, including Diphenhydramine and Citalopram, were present in Ms. Spillar's blood; however, in his opinion, those levels did not have any influence on her death.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2506(a) and 35 P.S. § 780-113(a)(30).

During trial, Agent Thomas Klawinski, formerly employed as a detective with the Westmoreland County Detective Bureau, testified relative to his involvement with this case. Agent Klawinski stated that in December of 2016, while working as a forensic detective, he responded to the scene of the suspected overdose to take photographs. Agent Klawinski testified that upon arrival, he observed a woman deceased, lying prone in her bedroom next to her bed with a Crown Royal bag lying near her, which contained identification, several pill bottles, credit cards, suspected heroin, and drug paraphernalia. Agent Klawinski indicated that he also observed and photographed three stamp bags labeled "Head Games" with the picture of a skull—one being opened and empty and two appearing full and folded up.

Jeffrey Wayne Houser testified that in December of 2016, he was residing in Derry with his girlfriend, brother-in-law, and Ms. Spillar. On December 24, 2016, Mr. Houser indicated that Ms. Spillar borrowed his vehicle and then returned home later that night. Mr. Houser stated that on the following day, Ms. Spillar walked the dog before returning home for the rest of the day. After falling asleep on December 25, 2016, Mr. Houser indicated that he did not see or hear Ms. Spillar come out of her room, nor did he see her come out of her bedroom the following day. Mr. Houser testified that on December 26, 2016, he discovered Ms. Spillar unresponsive, lying on the floor in front of the closed bedroom door, and he proceeded to call 9-1-1.

Tyler Robert Klapchar testified that on December 24, 2016, he texted [Appellant] requesting heroin, and then later that evening he walked to meet [Appellant] at a nearby sidewalk where he paid [Appellant] a hundred dollars for eleven stamp bags. Mr. Klapchar described the stamp bags as being preprinted with the name "Head Games" and a picture of a skull, with the top of the skull containing a soccer ball design. After purchasing the drugs, Mr. Klapchar testified that he and [Appellant] walked to [Appellant's] friend's house where he injected some of the drugs that he just purchased and subsequently overdosed on them. Presumably in an effort to reverse the suspected overdose, Mr. Klapchar stated that he awoke wet, in the shower surrounded by [Appellant] and his friend, and then he accompanied [Appellant] as [Appellant] walked to meet Ms. Spillar. Mr. Klapchar testified that "[i]t was very apparent to me that there was a drug deal happening." Mr. Klapchar indicated that he observed [Appellant] hand Ms. Spillar something, which he believed came from a box

in which [Appellant] generally kept his drugs, paraphernalia, and money, and he observed Ms. Spillar hand [Appellant] money. Mr. Klapchar indicated that before parting ways, he warned Ms. Spillar to be careful if she was going to use because he had just overdosed. According to Mr. Klapchar he used the one-and-a-half stamp bags that he had remaining, while at a friend's residence on Christmas evening, and he overdosed again and was revived with Narcan. The following day, Mr. Klapchar stated that he tried to purchase more stamp bags off of [Appellant]; however, [Appellant] refused and told him that he "was too much of a liability."

Ayla Mae Binion testified that she first met [Appellant] in 2016 and began staying at the same residence where he was staying in Saltsburg in early 2017, which she described as a "trap house." On one occasion i[n] early 2017, while both [she] and [Appellant were] at the residence, Ms. Binion stated that while sitting in the living room, [Appellant's] cell phone rang, he walked out of the room, and when he returned, he was "upset about the phone call." Ms. Binion indicated that [Appellant] informed her and the other people in the living room that, "it was a detective looking into a lady's overdose death from Derry, Pennsylvania." Ms. Binion stated [Appellant] was "upset" by the phone call and appeared nervous. Further, Ms. Binion testified that after informing the occupants in the living room about who called, [Appellant] also expressed concern that "they were going to charge him with a murder or manslaughter charge of some sort." Ms. Binion testified [Appellant] informed her that he sold drugs to the victim. During the June 2017 Preliminary Hearing in this matter, Ms. Binion previously stated [Appellant] told her that, "he sold the drugs that killed [the deceased]."

Sarah Kinner, who is employed by the Pennsylvania State Police as a Drug Section Supervisor in the Drug Identification Section and who was admitted as an expert in drug identification, testified that she examined the powder substance contained within the two glassine bags marked as "Head Games" and the residue from the empty stamp bag. Based upon her testing and examination, Ms. Kinner stated that the powder and residue from the stamp bags contained fentanyl, a Schedule II controlled substance.

Devyin Michael Spillar, the son of the deceased, testified that two or three days prior to Christmas of 2016, he went to the

residence where [Appellant] was staying and told him to stop selling drugs to his mother. Additionally, Mr. Spillar confirmed his mother's cell phone number on the record.

Westmoreland County Detective Randall Lee Gardner also testified relative to his involvement with this case. Detective Gardner testified that through his investigation, he prepared a search warrant for the incoming and outgoing phone calls and text messages from the cell phone number provided by Mr. Spillar and subsequently retrieved phone records from Ms. Spillar's cellphone. *See Commonwealth's Exhibit 9*. Detective Gardner testified that upon a review of the incoming and outgoing phone calls and text messages on December 24 and 25, 2016, there were multiple communications between Ms. Spillar's cellphone number and the number he had associated with [Appellant]. Specifically, on December 24, 2016, Detective Gardner testified that there were twenty-eight communications between Ms. Spillar's and [Appellant's] cellphones, beginning at 11:20 a.m. and ending at 5:45 p.m. Additionally, Detective Gardner indicated that there were two text messages between Ms. Spillar's and [Appellant's] cellphones on December 25, 2016, beginning at 9:18 a.m. and ending at 9:39 a.m. Detective Gardner stated that he then called the cellphone number that was associated with [Appellant], and [Appellant] answered the phone.

[Appellant] elected not to testify at trial.

[The Commonwealth had charged Appellant with one count of Drug Delivery Resulting in Death and three counts of Delivery of a Controlled Substance.] . . . Prior to jury deliberation, the Commonwealth moved to dismiss Count Four of the Criminal Information. On February 5, 2020, the jury returned a verdict of guilty of [the three] remaining counts. On June 18, 2020, [Appellant] was sentenced at Count One, [Drug Delivery Resulting in Death], to serve (6) to (12) years incarceration at the Department of Corrections. Count Two merged with Count One for purposes of sentencing. At Count Three, [Appellant] was sentenced to serve (1) to (2) years state incarceration concurrent to Count One. . . .

On July 10, 2020, [Appellant] filed a timely Notice of Appeal to the Pennsylvania Superior Court. On August 4, 2020, this [c]ourt ordered [Appellant] to file a Concise Statement of the

- 4 -

Errors Complained of on Appeal within (21) days. On August 25, 2020, [Appellant] filed said statement[.]

Trial Court Opinion, 10/28/20, at 1-6 (citations to notes of testimony omitted).

On appeal, Appellant presents two issues for review:

I.   WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE GUILTY VERDICTS?

II.  WHETHER [APPELLANT] IS ENTITLED TO A NEW TRIAL AS A PHONE RECORD (SPECIFIC PHONE NUMBERS) WERE GIVEN TO THE JURY FOR REVIEW DURING DELIBERATIONS WHICH HAD NOT BEEN ADMITTED INTO EVIDENCE?

Appellant's Brief at 4.

With regard to Appellant's first issue, we have repeatedly held that to preserve a sufficiency challenge, an appellant must specify the element or elements of a crime alleged to be insufficiently proven in the Rule 1925(b) statement. *See Commonwealth v. Brown*, 186 A.3d 985, 990 (Pa. Super. 2018) (citing *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009)). When the Rule 1925(b) statement fails to specify the relevant element or elements, the sufficiency issue is waived on appeal. *Commonwealth v. Ellison*, 213 A.3d 312, 320-21 (Pa. Super. 2019) (citations omitted).

In his Rule 1925(b) statement, Appellant states his sufficiency issue verbatim:

1. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE GUILTY VERDICTS.

Appellant's Concise Statement, 8/25/20.

Because Appellant failed to "specify the element or elements" — or even the convictions he was challenging — we find waiver. ***Ellison***, 213 A.3d at 320-21. However, even in the absence of waiver, we agree with the trial court that the evidence was sufficient. It is well-settled that:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Leaner***, 202 A.3d 749, 768 (Pa. Super. 2019) (citation omitted). We emphasize that the jury, as the trier of fact, is free to believe all, part, or none of the evidence, and we may not weigh the evidence and substitute our judgment for the jury. ***Commonwealth v. Melvin***, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

In his brief, Appellant challenges his conviction of Drug Delivery Resulting in Death, claiming the "Commonwealth failed to establish that [A]ppellant delivered a controlled substance to the deceased and failed to

establish it was <u>that</u> substance which resulted in her death." Appellant's Brief at 8 (underlining in original). Appellant also argues the evidence was insufficient to support his delivery of a controlled substance conviction to Ms. Spillar, "as neither direct evidence nor circumstantial evidence can lead one to conclude beyond a reasonable doubt that the substance handed to [the] deceased was fentanyl." *Id.* at 12. As to his conviction of delivering a controlled substance to Mr. Klapchar, Appellant argues the evidence was insufficient because of the "glaring inconsistence in testimony." *Id.* We disagree.

The trial court referenced the applicable statutes, explaining:

> Title 18, Section 2506(a) states:
>
> **(a) Offense defined.--**A person commits drug delivery resulting in death, a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.
>
> 18 Pa.C.S.A. § 2506(a).
>
> At trial, the Commonwealth alleged [Appellant] intentionally delivered, gave, or sold a controlled substance to Ms. Spillar in violation of the Controlled Substance, Drug, Device, and Cosmetic Act and Ms. Spillar died as a result of using the substance.
>
> At Counts Two and Three of the Criminal Information, [Appellant] was charged with Delivery of a Controlled Substance to Ms. Spillar and Mr. Klapchar, in violation of 35 P.S. 780-113(a)(30).

Title 35, Section 780-113(a)(30) states:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture, or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

At trial, the Commonwealth alleged that [Appellant] delivered a controlled substance, namely fentanyl to Ms. Spillar and fentanyl and/or heroin to Mr. Klapchar.

Trial Court Opinion, 10/28/20, at 7-8.

The court further explained:

[T]he Commonwealth has presented sufficient evidence to permit the jury, as trier of the facts, to find [Appellant] guilty of all the above-referenced charges. At trial, the Commonwealth presented evidence establishing that Ms. Spillar died and the cause of her death, as testified by Dr. Wecht, was a result of fentanyl toxicity. Agent Klawinski testified that through his investigation, he observed one empty and two full stamp bags labeled "Head Games" with the picture of a skull and paraphernalia near Ms. Spillar's body. Drug Section Supervisor Kinner testified that the powder substance contained within the two full glassine bags and the residue from the empty stamp bag contained fentanyl, a Schedule II controlled substance.

Mr. Houser testified that two days prior to Ms. Spillar's death, Ms. Spillar used his vehicle and she returned home later that evening. Mr. Houser's testimony reveals that on the following day, Ms. Spillar walked the dog before returning home for the rest of the day and after falling asleep on December 25, 2016, he did not see or hear Ms. Spillar come out of her room until he later discovered her unresponsive lying on the floor of her bedroom on the following day. Mr. Klapchar testified that two days prior to

Ms. Spillar's body being discovered, he walked with [Appellant] to meet Ms. Spillar where "It was very apparent to him that there was a drug deal happening." Mr. Klapchar's testimony revealed that he specifically observed [Appellant] hand Ms. Spillar something from what he believed to be a box where [Appellant] kept his drugs, and Ms. Spillar handed [Appellant] money. Prior to this interaction, Mr. Klapchar testified that on December 24, 2016, he contacted [Appellant] via text message requesting heroin for himself, and later that evening he met [Appellant] who provided him eleven stamp bags in exchange for one hundred dollars.

Mr. Klapchar's testimony revealed that the stamp bags were preprinted with the name "Head Games" with a picture of a skull, with the top of the skull containing a soccer ball design. This testimony was corroborated by the evidence testified to by Agent Klawinski. After purchasing the drugs, Mr. Klapchar testified that he injected some of the drugs that he had just purchased and subsequently overdosed on the substance twice before being revived both times. Ms. Binion testified that in early 2017, while both [she] and [Appellant] were at the same residence, [Appellant] received a call on his cellphone from a detective looking into a woman's overdose death from Derry, Pennsylvania. Ms. Binion's testimony revealed that [Appellant] was upset by the phone call, and he expressed concern that "they were going to try to charge him with a murder or manslaughter charge of some sort." Ms. Binion testified [Appellant] informed her that he sold drugs to the victim, and she previously testified that [Appellant] informed her that he sold *the drugs* to the victim that killed her. Detective Gardner's testimony revealed communication between Ms. Spillar's and [Appellant's] cellphone from the morning of December 24 through the morning of December 25, 2016.

Based on all of the evidence presented, including circumstantial evidence, and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the [c]ourt finds that the Commonwealth has presented sufficient evidence to establish each element of each offense charged.

Trial Court Opinion, 10/28/20, at 8-9 (italicized emphasis in original).

The record supports the court's analysis. To the extent there was inconsistency in witness testimony, "'[q]uestions concerning inconsistent

testimony . . . go to the credibility of the witnesses.'" ***Commonwealth v. Page***, 59 A.3d 1118, 1130 (Pa. Super. 2013) (quoting ***Commonwealth v. DeJesus***, 860 A.2d 102, 106 (Pa. 2004)). Credibility "lies solely within the province of the factfinder [and] any conflict in the testimony . . . is solely to be resolved by the factfinder.'" ***Id.*** (quoting ***Commonwealth v. Price***, 616 A.2d 681, 685 (Pa. Super. 1992)). Appellant's sufficiency issue lacks merit.

In his second issue, Appellant argues this Court "should grant a new trial because the [trial] court abused its discretion when it allowed the jury to take Exhibit 9 into the deliberation room." Appellant's Brief at 12. Appellant states:

> [T]he [trial court] allowed the jury to take into the deliberation room Exhibit 9, which contained numerous unidentified phone numbers. During deliberations, a juror recognized one of the unidentified phone numbers. She stated in front of all the other jurors that she recognized the phone number from thirty years ago and that the man that the phone number belonged to had previously been a drug dealer. The inclusion of the unidentified numbers within the deliberation room broke the province of the jury, as one juror recognized a number to be that of a previous drug dealer. The [trial court] abused its discretion by allowing Exhibit 9 into the deliberation room without redacting the unidentified numbers [because] the jury became prejudiced and a new trial should be granted.

***Id.*** at 13 (citations to notes of testimony omitted).

The Commonwealth counters that Appellant waived this issue by failing to make a timely objection. Commonwealth Brief at 10-11. The Commonwealth argues:

> Appellant's attorney explicitly stated that she had no objection to Commonwealth's Exhibit 9 being admitted into evidence.

Furthermore, Appellant's attorney also explicitly denied having an objection to [the trial court's] curative instruction to address the jury's concern; she in fact indicated that she believed the curative instruction was the best route to take. Therefore, because defense counsel failed to timely object to the admission of Commonwealth's Exhibit 9 as well as the judge's curative instruction to the jury during trial, this Honorable Court may not review this claim of error because the issue has been waived.

*Id.* at 11.

We agree. The trial court provides the following context:

Commonwealth's Exhibit 9 is a Sprint phone record relative to incoming and outgoing phone calls and text messages from Ms. Spillar's cellphone. The record was provided by Sprint Corporation on March 14, 2017 in response to a search warrant executed by Detective Gardner. The records contained a certification page that was signed and notarized by a Sprint representative verifying the truth and accuracy of the records used in the course of their business. During trial, the Commonwealth moved to admit this exhibit, and with no objection from Defense Counsel, the exhibit was admitted into evidence. The record contained additional numbers that were not investigated by Detective Gardner. As the cellphone records were properly admitted and Defense Counsel did not object to the admissibility of said evidence, the [c]ourt is of the opinion that this issue is waived.

Trial Court Opinion, 10/28/20, at 10 (citation to notes of testimony omitted).

We agree Appellant's failure to object results in waiver. "The absence of a contemporaneous objection below constitutes a waiver of the claim on appeal." *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145 (Pa. Super. 2017) (citing *Commonwealth v. Powell*, 956 A.2d 406, 423 (Pa. 2008)). Our Supreme Court has stated:

[I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. *See Commonwealth v. May,* [] 887 A.2d 750, 761 ([Pa.] 2005) (holding that an "absence of contemporaneous objections renders" an appellant's claim waived); and *Commonwealth v. Bruce,* [] 916 A.2d 657, 671

- 11 -

([Pa. Super.] 2007), *appeal denied,* [] 932 A.2d 74 ([Pa.] 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

**Commonwealth v. Baumhammers**, 960 A.2d 59, 73 (Pa. 2008).

This Court has also stated:

> Our Pennsylvania Rules of Appellate Procedure and our case law provide the well-established requirements for preserving a claim for appellate review. It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "The absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal. **Commonwealth v. Powell**, [] 956 A.2d 406, 423 ([Pa.] 2008); **Tindall v. Friedman**, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated.") (citation omitted)).

**Rodriguez**, 174 A.3d at 1144–45. Further, where an appellant includes an issue in his Pa.R.A.P. 1925(b) statement, the inclusion does not "resurrect" a waived claim. **Id.** at 1145 n.6 (citing **Steiner v. Markel**, 968 A.2d 1253 (Pa. 2009)).

After finding waiver, the trial court briefly commented:

> [O]f note, during deliberations, it was brought to the [c]ourt's attention that one juror recognized one of the unidentified numbers contained in the phone records and informed the remaining jurors of such. In response to this issue, and without any objections from counsel, the [c]ourt addressed the matter with the jury by providing the jury with a curative instruction. As the [c]ourt is unable to identify any error committed, the [c]ourt is of the opinion that this issue also lacks merit.

Trial Court Opinion, 10/28/20, at 10.

The record confirms Detective Gardner submitted a search warrant for Ms. Spillar's cellphone records. N.T., 2/5/20, at 267-68. Detective Gardner identified Commonwealth's Exhibit 9 as a true and correct copy of Ms. Spillar's cellphone records from Sprint Corporation on March 14, 2017. *Id.* at 268-69. The Commonwealth moved for the admission of Exhibit 9, and the trial court asked defense counsel, "Any objection?" *Id.* at 269. Defense counsel responded: "No objection, Your Honor." *Id.* The trial court admitted Exhibit 9 into evidence.

During deliberations, the trial court received a written statement from the foreperson stating that a "juror recognized a number on [the] call record linked to a drug dealer in the past." N.T., 2/5/20, at 381. After conferring with the counsel, the following discussion occurred on the record:

> [COURT]: I received a statement from the jury foreman in the case, and the statement read that the juror recognized a number on the call record linked to a dealer in the past, and it's signed by the jury foreman.
>
> With counsel present on the record, I called the jury foreman into my office and questioned him about that situation. And apparently one of the jurors must've recognized one of the phone numbers on the call log and made a comment about how the person may have been a dealer in the past.
>
> So without drawing too much attention to the particular juror in question, I'm going to call the jury back in and explain to them that they're only to consider the facts which have been presented in court. They're not to consider any facts which any of them think they may know, only the facts presented to them as they were together as a jury in the courtroom for their consideration.
>
> So is there any objection to that, I'll call it a curative instruction at this point?

[Commonwealth]:  No, Your Honor.

[COURT]: [Defense Counsel?]

[Defense Counsel]:  No, Your Honor.

N.T., 2/5/20, at 391-92.

It is clear Appellant's counsel failed to object to the phone records being admitted into evidence as Exhibit 9.  **See** N.T., 2/5/20, at 267-69; **see also** Trial Court Opinion, 10/28/20, at 10.

Also, defense counsel did not object to the court's curative instruction after learning about the juror who recognized a number contained in the phone records during deliberations.  The court asked counsel, "So neither of you have . . . any objection if I handle it that way?"  N.T., 2/5/20, at 384.  Defense counsel answered, "I think that's the best way."  **Id.**

In sum, we agree Appellant's second issue is waived.  **See Commonwealth v. Montalvo**, 956 A.2d 926, 936 (Pa. 2008) (recognizing "general rule that in order to preserve a claim on appeal a party must lodge a timely objection at trial"); Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Judgment of sentence affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/1/2021

- 14 -