J-A10012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE LINDELL | : | |
| | : | |
| Appellant | : | No. 1393 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 18, 2020
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003091-2018

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED AUGUST 31, 2021**

Lawrence ("Larry") Lindell appeals from his judgment of sentence for theft by unlawful taking, receipt of stolen property and criminal conspiracy. He contends the Commonwealth failed to establish his involvement in the theft or a conspiracy. We affirm.

Lindell and Ralph Walsh were arrested after a tree stump grinder was stolen from the property of Joseph Denisar. Lindell was charged with one count of theft by unlawful taking, one count of receiving stolen property and two counts of criminal conspiracy. The matter proceeded to a two-day jury trial on October 29, 2019, and October 30, 2019.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Denisar testified at trial that he was in the tree service business and owned a green stump grinder that he kept outside his residence on Street Road in West Grove, Pennsylvania. *See* N.T. Trial, N.T. 10/29/2019, at 71, 83, 91. At around 7:15 in the morning on June 1, 2017, Denisar was leaving for work when his girlfriend told him that a truck with a gun was riding up and down their road. *See id.* at 85-86. Denisar looked out the window and saw a black Dodge dually pickup truck[1] with a Delaware license plate. *See id.* at 87. Denisar left, but when he drove by his house around noon on that same day, he noticed that his stump grinder was no longer outside his residence. *See id.* at 85. He reported the missing stump grinder to the police, and his daughter posted about the stolen stump grinder on social media. *See id.* at 85, 88.

Tina Hoffman also testified at trial. She recounted that between 6:30 and 7:00 a.m. on June 1, 2017, she was commuting to work on Route 926 not far from Denisar's residence and was behind a black Dodge pickup truck with Delaware plates. *See* N.T. Trial, 10/30/2019, at 7-8. According to Hoffman, the black Dodge truck slowed down, and quickly motioned for a red Chevy truck with a ladder rack to pull into traffic in front of it. *See id.* at 7, 9, 10. Hoffman stated that the red Chevy truck was pulling a large, green

---

[1] A dually truck is a "pickup truck with dual rear wheels for a total of six wheels." https://www.motortrend.com, "The Best Heavy-Duty Dually Trucks to Buy in 2021," May 6, 2021; *see also* N.T. Trial, 10/30/19, at 69 (describing a dually as a pickup truck with dual wheels on the back).

machine which she later recognized to be a stump grinder. ***See id.*** at 9. After seeing the post about Denisar's stolen stump grinder on social media a day or two later, Hoffman called the police and gave them the license plate number of the Dodge pickup truck she had been behind. ***See id.*** at 12

Robert Denisar, Joseph Denisar's nephew, also testified at trial. He explained that he had used his uncle's stump grinder many times, that his uncle's stump grinder was distinctive in that it had a tool box attached to it, and that he was aware that the grinder had been stolen. ***See*** N.T. Trial, 10/29/2019, at 96-97. On June 17, 2017, Robert Denisar was driving near his residence in Wilmington, Delaware when he saw a red and white Chevy pickup truck towing what he recognized as his uncle's stump grinder. ***See id.*** at 97, 98. Robert Denisar testified that the stump grinder now had a sign on it that read "Larry's Lumberjack" with an accompanying phone number of 384-4499. ***See id.*** at 113-114.

Robert Denisar took a picture of the stump grinder, which he later sent to his uncle, and followed the Chevy truck. ***See id.*** at 98, 100, 102. When the Chevy truck stopped to confront Robert Denisar, Robert Denisar was able to see the driver through the window of the truck. ***See id.*** at 100 -101. He testified at trial that Lindell looked like the driver of the red Chevy truck that he had seen on June 17. ***See id.*** at 106-107.

Robert Polen, who knew Joseph Denisar through the tree industry, testified that about a week or two after he had seen the social media posting

about Denisar's missing stump grinder, he found a cell phone on the side of the road near Grove Road in London Grove Township. *See* N.T. Trial, 10/30/19, at 17, 20-21. The text messages on the cell phone included the same number that had been included on the social media post about the stolen stump grinder. *See id.* at 18. That number had the contact name "Larry" attached to it. *See id.* at 19.

Polen called the contact on the cell phone labeled "dad" in an attempt to locate the owner of the cell phone. *See id.* at 19. That contact informed Polen that his son lived on a property off of Route 841 in London Grove Township, and told him that if there was a black Dodge dually truck in the driveway, his son was home. *See id.* at 19, 21. Polen did not attempt to return the cell phone to its owner but rather, gave it to the police. *See id.* at 20.

Pennsylvania State Trooper Scott Enedy testified that the owner of the cell phone turned out to be Ralph Walsh. *See* N.T. Trial, 10/30/19, at 73. Trooper Enedy also stated that after viewing the photograph taken by Robert Denisar, he learned that the phone number under the "Larry's Lumberjack" sign on that photograph belonged to Lindell and that Lindell's address was listed as 402 Maple Avenue in Delaware. *See id.* at 75. Trooper Enedy went to that property, but nobody answered the door.

Trooper Enedy then went to the property off of Route 841 that had been described to Robert Polen by the "dad" contact on the found cell phone. That

property had a black dually truck outside of it with a license plate number that matched the one provided by Tina Hoffman. *See id.* at 77.

The trooper spoke with Ralph Walsh at that property. Walsh claimed that he had just bought the truck. *See id.* at 78. He denied any involvement with the taking of Denisar's stump grinder, but he told the trooper that he could find the grinder and red Chevy pickup truck at 402 Maple Avenue in Delaware. *See id.* at 79. He advised the trooper that if the grinder was not there, it would be behind the property across the street from 402 Maple Avenue. *See id*. at 80. The trooper found the stump at 403 Maple Avenue, and the serial number on the grinder matched the serial number given to Trooper Enedy by Denisar. *See id.* at 80-81. The grinder had been painted yellow. *See id.* at 80.

Trooper Enedy also spoke with Walsh about his cell phones. According to Trooper Enedy, Walsh had two cell phones. *See id.* at 91. One was the phone found by Robert Polen on the side of the road, issued through Verizon, that had a number ending in 1647. *See id.* At 91-92. The other was a work cell phone through AT & T that had a number ending in 7815. *See id.* at 91.

Phone records showed that Walsh received a call at 4:45 a.m. on June 1, 2017 on his AT & T phone from 302-384-4499, which an employee of T-Mobile testified was Lindell's cell phone number. *See id.* at 29, 40-41, 93. The call originated somewhere in the vicinity of Wilmington, Delaware. *See id.* at 94. At 6:38 a.m., there was another call made from Lindell's cell phone to

Walsh's AT & T phone and the call originated from an area on Route 926 close to Denisar's residence. *See id.* at 95-97.

The phone records also revealed that, between 4:43 a.m. and 4:57 a.m. on June 1, 2017, there were eight text messages exchanged between Walsh's AT & T phone and Lindell's phone. *See id.* at 101. At 10:28 a.m. that same morning, a text was sent from Walsh's Verizon cell phone to Lindell's cell phone asking "How's grinder working for you[?]" *Id.* at 102-103. Twelve minutes later, Walsh received a text on his Verizon cell phone from Lindell's cell phone responding "Good." *Id.* at 103-104.

Following the testimony, the jury convicted Lindell of one count of theft by unlawful taking, one count of receiving stolen property and two counts of conspiracy. The court sentenced Lindell to eleven and one-half to 23 months' incarceration, to be followed by one year of probation. Lindell filed a timely notice of appeal. He then complied with the court's directive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, raising a claim that the evidence was insufficient to support the verdict. In response, the court issued a Pa.R.A.P. 1925(a) opinion in which it rejected Lindell's sufficiency claim.

In his sole issue on appeal, Lindell contends that the trial court erred by concluding that the evidence was sufficient to sustain the verdict. He primarily argues that because there was no direct evidence of him stealing the stump grinder or agreeing with Walsh to do so, the Commonwealth had failed to

present sufficient evidence to support his conviction for theft by unlawful taking and conspiracy. This claim is meritless.

The evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence and all reasonable inferences derived from the evidence are sufficient to establish all of the elements of the offense beyond a reasonable doubt. **See Commonwealth v. Blakeney**, 946 A.2d 645, 651 (Pa. 2008). The Commonwealth may sustain its burden entirely by circumstantial evidence. **See Commonwealth v. Ramtahal**, 33 A.3d 602, 607 (Pa. 2011). Moreover, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence. **See id.**

To sustain a conviction for theft by unlawful taking, the Commonwealth must show that the defendant has "unlawfully take[n], or exercise[d] unlawful control over, movable property of another with intent to deprive him" of that property. 18 Pa. C.S.A. § 3921(a).

To sustain a conviction for conspiracy, meanwhile, the Commonwealth must show that the defendant "with the intent of promoting or facilitating [a crime's] commission … [has] agree[d] with [another] person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or … [has] agree[d] to aid [another] person or persons in the planning and commission of such crime, or of an attempt or solicitation to commit such crime." 18 Pa. C.S.A. §

903(a)(1), (a)(2). The Commonwealth must also prove that an overt act was committed in furtherance of the conspiracy. *See id.* at § 903(e). A co-conspirator may be liable for the overt acts committed in furtherance of the conspiracy, regardless of whether it was he or his co-conspirator who committed the acts. *See Commonwealth v. Barnes*, 871 A.2d 812, 820 (Pa. Super. 2005).

Moreover, in order to prove conspiracy, the Commonwealth is not required to present evidence of an explicit or formal agreement to commit a certain crime. *See Commonwealth v. Melvin*, 103 A.3d 1, 43 (Pa. Super. 2014). Instead:

> [P]roof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Id.* (citation omitted).

In finding that there was sufficient evidence to sustain Lindell's convictions for theft by unlawful taking as well as conspiracy, the trial court stated:

> … A stump grinder, owned by Joseph Denisar, was unlawfully taken from his property on June 1, 2017. Tina Hoffman saw the stump grinder[ ] being pulled by a red and white truck between 6:30 a.m. and 7:00 a.m. on June 1, 2017. Tina Hoffman also saw a black pick-up truck with a Delaware license plate wave the red truck with [the] stump grinder onto the roadway. Robert

- 8 -

Denisar took a photo of the same red and white truck with the stump grinder driving in his neighborhood. He followed the truck and identified the driver as [Lindell]. The photo taken by Robert Denisar included a sign "Larry Lumberjack" with the phone number of 384-4499. That same phone number was identified by … an employee of T-Mobile [ ] as [Lindell's] cell phone number. …

Trooper Enedy investigated the Delaware license plate number given to him by Tina Hoffman and discovered the black Dodge truck belonged to Ralph Walsh. After speaking with Ralph Walsh, Trooper Enedy found the stump grinder [ ] attached to a red and white pick-up truck across the street from [Lindell's] father's residence. The serial number matched the serial number Joseph Denisar gave the police.

Finally, the cell phone records from AT & T, Verizon and T-Mobile … show phone calls and text messages between [Lindell] and Ralph Walsh on the morning of June 1, 2017. … The cell phone records identify that the calls were made within the area of Delaware, where [Lindell] resides, West Grove, where Ralph resides, and Route 926 and Street Road, near Joseph Denisar's residence.

Trial Court Opinion, 9/14/20, at 9-10.

We agree with the trial court that these circumstances provided sufficient evidence to support the jury's conclusion that Lindell and Walsh entered into an agreement to steal the stump grinder from Denisar and did, in fact, steal that stump grinder. While Lindell disputes this finding on the basis that there was no direct evidence of an agreement between him and Walsh or that he was the one who actually used his cell phone on June 1, 2017, this Court has made clear that the Commonwealth may prove the charges against a defendant, including conspiracy, using circumstantial evidence alone. *See Ramtahal*, 33 A.3d at 607; *Melvin*, 103 A.3d at 42.

The evidence was capable of establishing that Lindell was in communication with Walsh before and after the theft, and that he was nearby when the theft occurred. Further, the evidence was sufficient to allow the jury to find that Lindell aided Walsh not only in transporting the stolen stump grinder, but that he exercised control over it by storing it near his home. No relief is due.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/2021